UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
LINDA M. COLEMAN,

                               Plaintiff,               **MEMORANDUM AND ORDER**
                                                     Case No. 08-cv-0379 (TLM)

         -against-

TOWN OF BROOKHAVEN, DEPARTMENT OF
PARKS, RECREATION, SPORTS AND CULTURAL
RESOURCES, et al.,

                             Defendants.
--------------------------------------------------------------X

**TUCKER L. MELANÇON, Senior United States District Judge:**

     Plaintiff Linda Coleman alleges that defendants Town of Brookhaven, Department of Parks Recreation Sports and Cultural Resources ("Brookhaven"), Bob Chartuk ("Chartuk") and Frank Pasqualo's ("Pasqualo") discriminated against her on the basis of her race. Plaintiff asserts claims against Brookhaven under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., New York State Executive Law § 296, and contract law, and claims against all defendants under 42 U.S.C. §§ 1981, 1983 and 1985.

     Before the Court are defendants' Motion for Summary Judgment [Rec. Doc. 37], plaintiff's Memorandum in Opposition thereto and Motion for Partial Summary Judgment on her § 1983 claim [Rec. Doc. 44], and defendants' Reply Memorandum in further support of their Motion of Summary Judgment and Memorandum in Opposition to plaintiff's Motion for Partial Summary Judgment [Rec. Doc. 45]. Defendants move for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' Motion for Summary Judgment [Rec. Doc. 37] will be GRANTED IN PART and DENIED IN PART, and plaintiff's

Motion for Partial Summary Judgment [Rec. Doc. 44] will be DENIED.

I.      **Background**

Plaintiff is a black female employed by Brookhaven.  Brookhaven is a municipal corporation, organized and existing under the laws of the State of New York.  Chartuk and Pasqualo are white males who worked for Brookhaven at the relevant times, and held supervisory roles over plaintiff.

Plaintiff began working for Brookhaven as a laborer in 1999.  Am. Compl. ¶ 16.  She was subsequently promoted to Custodial Worker I, Maintenance Mechanic I, and Maintenance Mechanic II.  Millus Decl., Exh. T.  At some point, plaintiff was assigned within Brookhaven's Department of Parks to an area known as Bald Hill.  L. Coleman Dep. 52.  Plaintiff alleges that in 2004, she complained to her union representative, Eddie Gregory, that she was being given work assignments that were "out of title" or "under title," and claims that Gregory told her he would convey her complaints to her then-supervisor, Marty Crispino.  L. Coleman Dep. 57-62, 73-75.  She alleges that some time thereafter Crispino asked her: "why are you crying, I thought you were a bad ass black woman?" and alleges that this query was in response to the complaints she had made to Gregory. L. Coleman Dep. 72, 104-05.

In late 2004 or early 2005, Pasqualo replaced Crispino as plaintiff's supervisor.  L. Coleman Dep. 108.

Edward Forrester III ("Forrester III"), a co-worker, alleges that some time in early 2005 Pasqualo referred to plaintiff as a "fucking bitch" out of plaintiff's presence (but in the presence of several other employees).  Forrester III Dep. 62.

On June 18, 2005, plaintiff alleges co-worker Thomas DeSena intentionally kicked a garbage can toward her, and that when she sought help, another co-worker told her that she needed to

continue working or could "go the fuck home." L. Coleman Dep. 119-29. Plaintiff reported this incident in two union grievances filed on July 28, 2005. Millus Decl., Exh. G.

Plaintiff alleges further that she was frequently assigned large tasks and given inadequate help, that she was assigned to work alone and unassisted more frequently than other employees, and that on several occasions she was subjected to angry and hostile remarks from co-workers for requesting help. L. Coleman Dep. 143-69. Plaintiff reported these complaints in two additional union grievances, also filed on July 28, 2005. Millus Decl., Exh. G. Her co-worker Edward Forrester III alleges that he was frequently paired to work with plaintiff, and that they were assigned the task of picking up garbage more frequently than other employees. Forrester III Dep. 39-40.

Plaintiff also alleges that she was not given a key to the trailer to which she would report for her assignments, and that other employees had keys to the trailer, and that she often had to wait for other employees to open the door. L. Coleman Dep. 270-82.

Chartuk scheduled a mandatory meeting for members of plaintiff's crew with Brookhaven's Employee Assistance Program on August 11, 2005 to discuss plaintiff's issues as well as others. Millus Decl., Exh. H; Chartuk Dep. 45-46; Pasqualo Dep. 55-56; L. Coleman Dep. 171-79.

Around the time of the meeting, plaintiff's grievances were brought to the attention of David Cohen, Brookhaven's outside counsel. Plaintiff claims that Cohen spoke to her at least once, and to her husband once, regarding her grievances. L. Coleman Dep. 133, 179-80. The number and timing of plaintiff's meetings and communications with Cohen, and what exactly she told Cohen, is unclear from the record. Plaintiff alleges that she complained to Cohen of racial discrimination. L. Coleman Dep. 180-82; Am. Compl. ¶¶ 19-24.

Plaintiff alleges still further that on or around August 19, 2005 she was "set up," i.e. tricked

by one supervisor into getting reprimanded by another. Specifically, plaintiff claims that one day Pasqualo told her to work first at Martha Avenue Park and then at Granny Road Park, and then to staff an event in the evening. She alleges that when she went home to change her clothes after working at Granny Road Park and before the event, Chartuk went to her home and "asked [her] what [she was] doing home." L. Coleman Dep. 226. She alleges that when she told Chartuk what her assignment was for the day, Chartuk communicated with Pasqualo, and Pasqualo denied having told her to leave Martha Avenue Park in the first place. At that point, she alleges, Chartuk told her to come to his office the following Monday to discuss the incident. Forrester III was with plaintiff throughout the incident. Am. Compl. ¶¶ 33-42; L. Coleman Dep. 217-230; Forrester III Dep. 49-70.

Edward Forrester Jr. ("Forrester Jr."), a Brookhaven employee and the father of Forrester III, alleges that shortly after the alleged setup incident Pasqualo told him that his son, Forrester III, should change his story about the incident, and told Forrester Jr. that "if [Forrester III] sides with the niggers, he will never get a full-time job in this town." Forrester Jr. Dep. 18-20.

Plaintiff and her husband claim that they visited Pasqualo at work and plaintiff's husband complained to him about the incident. T. Coleman Dep. 8-10. Plaintiff alleges that Edward Forrester Jr. told her that Pasqualo, in reference to the Colemans' visit, told Edward Forrester Jr. that "them niggers had the nerve to come to [Bald] Hill." L. Coleman Dep. 245; Am. Compl. ¶ 52.

After the incident, plaintiff was assigned to work exclusively at Martha Avenue Park until further notice. L. Coleman Dep. 262; Calliste Decl., Exh. G. Plaintiff alleges, as do her husband and Forrester Jr., that Martha Avenue Park has a high crime rate. L. Coleman Dep. 231-35; T. Coleman Dep. 15; Forrester Jr. Dep. 96-97. Plaintiff does not allege that she was punished in any other way as a result of the alleged setup incident. Plaintiff's Rule 56.1 Stmt. ¶ 54.

On October 5, 2005, plaintiff lodged a complaint against Brookhaven with the New York State Executive Department, Division of Human Rights. Millus Decl., Exhs. A, I. Plaintiff filed a complaint initiating this action on January 28, 2008. Plaintiff served an Amended Complaint on defendants on March 21, 2008.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Such a determination is to be made "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir.2009).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party must satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim, and if the moving party succeeds the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* at 322-23.

Once the burden shifts to the respondent, the respondent must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing

a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56©; Celotex Corp., 477 U.S. at 322.

## III. Plaintiff's Title VII Claims

### A. Legal Framework for Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits, *inter alia*, discrimination on the basis of race, 42 U.S.C. § 2000e-2(a)(1), and retaliation for opposition to unlawful racial discrimination, 42 U.S.C. § 2000e-3(a). The Supreme Court has held that discrimination provision is violated not only when an employer takes a concrete discriminatory action, but also when a "hostile work environment" exists; that is "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Plaintiff's Amended Complaint appears to allege three types of Title VII violations: a concrete discriminatory action; a hostile work environment; and retaliation.

Title VII claims are analyzed under the familiar three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under the

*McDonnell Douglas* framework, a Title VII plaintiff must first proffer sufficient evidence to make out a prima facie case. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir.2004). Plaintiff's burden at this stage is "de minimis," and the requirement of meeting it is "neither onerous, nor intended to be rigid, mechanized, or ritualistic." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (internal quotation marks and citations omitted). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks omitted). "Nonetheless, a plaintiff's case must fail if she cannot carry this preliminary burden." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008).

If a plaintiff meets her burden in establishing a prima facie case, the defendant employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must then provide evidence that the employer's explanation is not true, but rather a pretext for discrimination. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir.2001).

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). But the Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where...the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008).

B.      Plaintiff's Discrimination Claim

      1.      Concrete Discrimination Action

To establish a prima facie case of Title VII discrimination based on a concrete action, a plaintiff must show: "(1) she is a member of a protected class; (2) she is qualified to perform the job in question; (3) there was an adverse employment action; and (4) circumstances supporting an inference of discrimination." *Carter v. New Venture Gear, Inc.*, 310 Fed.Appx. 454, 456 (2d Cir.2009).

Plaintiff fails to make out a prima facie case because she does not produce evidence sufficient to satisfy the third element above; that is, she does not produce evidence that could show that she suffered an adverse employment action.

"For purposes of Title VII's substantive anti-discrimination provisions, an adverse employment action is generally characterized as a materially adverse change in the terms and conditions of employment, and may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Bowles v. New York City Transit Authority*, 285 Fed.Appx. 812, 813-14 (2d Cir.2008) (internal quotation marks omitted). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 814.

Here, if full weight is afforded to all of the evidence plaintiff provides, she can show only: (1) that Crispino once called her a "bad ass black woman" and Pasqualo once referred to her as a "bitch" outside of her presence; (2) that she has been assigned less pleasant tasks more frequently than others throughout her time as an employee of the Parks Department, and was not given the same access to an equipment trailer as other employees; (3) that she was "set up" one day, i.e. that Pasqualo gave her an assignment, Chartuk caught her at home in the middle of the day and

questioned her about her assignment, and Pasqualo told Chartuk that he had given her a different assignment than he actually gave her; (4) that she was subsequently assigned to work for a period at Martha Avenue Park, a park at which she had worked previously; and (5) that Pasqualo referred to her as a "nigger" on one occasion, and to her and her husband as "niggers" on another occasion, both outside of her or her husband's presence.[1]

The foregoing, if established, would not constitute adverse employment actions under Second Circuit jurisprudence; plaintiff was not fired or demoted, she did not lose any title, compensation, or benefits, and her responsibilities did not change significantly. As no adverse employment action occurred, plaintiff's concrete discrimination action claim must be dismissed.

2.      Hostile Work Environment

To establish a prima facie case of Title VII discrimination based on a hostile work environment, a plaintiff must show: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir.2003). Among the factors to be considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir.2004). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation

---

[1]The alleged use of the word "niggers" in reference to her and her husband is only supported by uncorroborated hearsay.

marks omitted).

Plaintiff fails to make out a prima facie case because she does not produce sufficient evidence to satisfy the first element above; that is, she does not produce evidence that could show that her workplace was permeated with severe or pervasive discriminatory intimidation. The mistreatment that she alleges was neither pervasive nor humiliating nor threatening; rather, she presents a melange of isolated offensive utterances and non-race-related tensions that were spread out over a number of years. Therefore, plaintiff's hostile work environment claim must be dismissed.

C.     Plaintiff's Retaliation Claim

To establish a prima facie case of Title VII retaliation, a plaintiff must show: "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Anderson v. Department of Children and Families, State of Conn.*, 322 Fed.Appx. 15, 16 (2d Cir.2009).

The Supreme Court has distinguished between the types of "adverse employment action" necessary in the various types of Title VII claims, holding that "Title VII's substantive [anti-discrimination] provision and its antiretaliation provision are not coterminous" with respect to the type of employer conduct they forbid. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In a retaliation claim, a plaintiff need only show "that a reasonable employee would have found the challenged action materially adverse," which means that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (2006) (internal quotation marks omitted). The Court emphasized that "the significance of any

given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Id.*
at 69.

A retaliation claim is different, in other words, than a discrimination claim, in which a plaintiff must show either a "materially adverse change in the terms and conditions of employment" (for a concrete discrimination action claim) or "discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment" (for a hostile work environment claim).  *See* Section III.B, *supra*.  Therefore, the fact that plaintiff did not suffer an adverse employment action for the purposes of her discrimination claim does not necessarily mean that she did not suffer one for the purposes of her retaliation claim.

Plaintiff puts forth deposition testimony, both her own and that of Forrester III, stating that on or around August 19, 2005 Chartuk and Pasqualo orchestrated a sequence of events by which she was "set up" to be reprimanded for simply following orders.  She puts forth the undisputed fact that after the incident she was assigned to work exclusively at Martha Avenue Park until further notice, to which she adds her own testimony, as well as that of her husband and Forrester Jr., that Martha Avenue Park had a high crime rate and was a dangerous place to work.  While neither the alleged setup incident at plaintiff's home or her subsequent assignment to Martha Avenue Park constituted an "adverse employment action" for discrimination purposes, either could be an "adverse employment action" for retaliation purposes.  Such a determination, on which the third element of plaintiff's prima facie retaliation claim hinges, must be made by a finder a fact considering the context and particular circumstances in which these actions occurred.

There is also evidence in the record sufficient to establish each of the other three elements of her prima facie case of retaliation.

First, plaintiff testified at her deposition that she complained to David Cohen, Brookhaven's outside counsel, of racial discrimination, which would constitute protected activity under Title VII. Defendants appear to admit as much in the Statement of Material Facts accompanying their Motion. Defendants' Rule 56.1 Stmt. ¶ 47.[2]

Second, defendants admit that they were aware of plaintiff's complaints generally, and suggest, without directly admitting, that they were aware of the nature of her complaints to Cohen. *Id.* at ¶¶ 46-48.

Finally, the fact that the alleged setup and subsequent assignment to Martha Avenue Park took place shortly after plaintiff spoke to Cohen suffices to satisfy the causal connection element of plaintiff's prima facie case. *See Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir.2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action" (internal quotation marks omitted)).

Drawing all permissible inferences in plaintiff's favor, i.e. assuming that plaintiff complained of racial discrimination to Cohen, and then Chartuk and Pasqualo, knowing of her complaints, took one or more actions against her that a reasonable employee would have found materially adverse, plaintiff has met her minimal initial burden and established a prima facie case.

Once a plaintiff has met her burden in establishing a prima facie case of Title VII retaliation, "the defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the challenged action." *Kemp v. A & J Produce Corp.*, 164 Fed.Appx. 12,

---

[2]The four union grievance forms that plaintiff filed on July 28, 2005 focused on very specific complaints, but did not allude in any way to racial discrimination, and thus are not relevant to her retaliation claim.

15 (2d Cir.2005).

Defendants do not admit or deny that the alleged setup occurred, and thus do not put forth a non-retaliatory explanation of the incident. With regard to plaintiff's subsequent assignment to Martha Avenue Park, which defendants agree occurred, defendants put forth Chartuk's deposition testimony, in which he states that plaintiff was assigned to work at Martha Avenue Park because "the town was spending hundreds of thousands of dollars to make it a beautiful park that everyone could be proud of," and that the assignment was "actually a plum, a great assignment, that [plaintiff] would be assigned to that park to do the finishing touches and make it look nice." Chartuk Dep. 113-15. Therefore, defendants put forth a legitimate, non-retaliatory reason for one of the challenged actions, but not the other.

Where defendants produce evidence of a non-retaliatory reason, a plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir.2001).

To that end, plaintiff puts forth Forrester Jr.'s testimony that Pasqualo suggested that his son, Forrester III, change his story about the alleged setup incident, and told Forrester Jr. that "if [Forrester III] sides with the niggers, he will never get a full-time job in this town." Forrester Jr. Dep. 18-20. Forrester Jr.'s testimony suggests that Pasqualo, Chartuk, and others in Brookhaven's power structure sought both to use their leverage against plaintiff in a struggle that had a racial component, and to cover up that they were doing so. Taking Forrester's account of what Pasqualo said to him as true, a finder of fact could find that retaliatory animus was behind the alleged setup incident and subsequent assignment to Martha Avenue Park, and that Chartuk's explanation about

the renovations was pretextual.

There is sufficient evidence in the record before the Court to suggest that the non-retaliatory reason assigned to plaintiff's assignment to Martha Avenue park was in fact a pretext for unlawful retaliation, and defendants have not even assigned a non-retaliatory reason to the alleged setup incident.

As plaintiff has put forth a prima facie case of retaliation, and sufficient evidence to show that defendants' stated non-retaliatory explanation for the alleged retaliatory action is pretextual, defendants' motion for summary judgment on plaintiff's retaliation claim must be denied.

## IV. Plaintiff's Other Claims

### A. Plaintiff's Claims Under 42 U.S.C. §§ 1981, 1983 and 1985

Because employment discrimination claims asserted under the Equal Protection Clause are subject to the same evaluation as Title VII claims, *Cunningham v. New York State Dept. of Labor*, 326 Fed.Appx. 617, 620 (2d Cir.2009), plaintiff's constitutional discrimination claims fail for the same reasons as do her discrimination claims brought under Title VII.

Further, retaliation claims may not be brought under the Equal Protection Clause, as retaliation for complaining of racial discrimination is not an Equal Protection violation, and thus plaintiff's constitutional retaliation claims must be dismissed as well. *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir.1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.") As plaintiff has no remaining claim for any constitutional violation, the portions of her action brought under 42 U.S.C. §§ 1981, 1983 and 1985 must be dismissed in their entirety.

### B. Plaintiff's Claim Under New York State Executive Law § 296

Because employment discrimination claims asserted under the New York State Executive Law § 296 are subject to the same evaluation as Title VII claims, *Weinstock v. Columbia University*, 224 F.3d 33, 42 n. 1 (2d Cir.2000), plaintiff may not show a violation of § 296(1)(a), the law's antidiscrimination provision, but may show a violation of § 296(1)(e), the law's antiretaliation provision. Therefore, defendants' motion for summary judgment on plaintiff's claim under New York State Executive Law § 296 will be denied, but what survives is narrowed in scope to a claim for retaliation.

C.      Plaintiff's Contract Claim

Plaintiff asserts a claim for breach of contract against Brookhaven, arguing that certain promises implied in its offer of employment and certain terms and statements contained in its employee handbook amounted to contracts that were breached by virtue of Brookhaven's alleged retaliation. As defendants' pleadings and supporting materials make no reference either to plaintiff's claim for breach of contract or to the relevant promises and handbook provisions (or lack thereof), Brookhaven fails to meet its burden to demonstrate the absence of issues of material fact as to that claim, and defendants' motion for summary judgment on plaintiff's claim for breach of contract against Brookhaven must be denied.

**V.      Plaintiff's Motion for Partial Summary Judgment**

As defendants are entitled to summary judgment on plaintiff's § 1983 claim, plaintiff's Motion for Partial Summary Judgment on her § 1983 claim will be denied.

**VI.     Conclusion**

Brookhaven's Motion for Summary Judgment on plaintiff's claim under Title VII of the Civil Rights Act of 1964 is GRANTED with respect to discrimination (42 U.S.C. § 2000e-2(a)(1)),

and DENIED with respect to retaliation (42 U.S.C. § 2000e-3(a)).

Brookhaven's Motion for Summary Judgment on plaintiff's claim under New York State Executive Law § 296 is GRANTED with respect to discrimination (N.Y. Exec. Law § 296(1)(a)), and DENIED with respect to retaliation (N.Y. Exec. Law § 296(1)(e)).

Brookhaven's Motion for Summary Judgment on plaintiff's claim under contract law is DENIED.

Defendants' Motion for Summary Judgment on plaintiff's claims under 42 U.S.C. §§ 1981, 1983 and 1985 is GRANTED.

Plaintiff's Motion for Partial Summary Judgment on her claims under 42 U.S.C. § 1983 is DENIED.

**SO ORDERED.**

Tucker L. Melançon
United States District Judge

April 23, 2009
Brooklyn, NY